SAVERIO PELUSO, PLAINTIFF-APPELLANT, v. TOWNSHIP OF OCEAN, A MUNICIPAL CORPORATION, ETC., DE-FENDANT-RESPONDENT, AND JAMES A. ERRICKSON, DEFENDANT.

Superior Court of New Jersey
Appellate Division

Argued September 14, 1964—Decided October 26, 1964.

210

Before Judges CONFORD, KILKENNY and LEWIS.

*Mr. Solomon Laulman* argued the cause for appellant (*Mr. Donald J. Rapson,* of counsel).

*Mr. Vincent J. Agresti* argued the cause for respondent.

The opinion of the court was delivered by

CONFORD, S. J. A. D. This is a suit instituted in the Chancery Division to compel the conveyance by defendant to plaintiff of certain lots which he claimed to own. The action seeks, in effect, the nullification of a judgment entered in defendant's favor in an *in rem* tax foreclosure proceeding affecting the property, plaintiff asserting he relied upon a tax search certificate issued to him at his request shortly before the institution of the foreclosure indicating no taxes were owing on the lots. From a judgment for defendant, based primarily on grounds of statute of limitations and laches, plaintiff appeals.

Because of the incompleteness of the statement of the respective parties' positions at the pretrial conference and of the presentation of the facts at the trial, which did not involve the taking of testimony, but was largely based upon stipulations and assertions by counsel, it remained unclear at the argument before us whether or to what extent any taxes were ever assessed on the properties in question or as to what, if assessed, the arrears amounted. As a result of inquiry by this court, however, enough information has now been elicited to permit the conclusions herein arrived at, and the court will exercise its original fact-finding jurisdiction to the extent indicated hereinafter.

The present controversy is confined to a group of some 277 lots; these are to be distinguished from another group which we shall designate as lots 7829–7859, inclusive, covered by the same tax foreclosure mentioned above but not now claimed by plaintiff. Plaintiff acquired title to both groups of lots February 6, 1934. It does not appear whether he made any official inquiry concerning tax arrears or liens thereon at the time, or whether he conducted a title search before taking title to the

property. It is agreed as a fact that he has never paid any taxes on any of the lots at any time. It is also the remarkable fact that after 1932 no tax assessment was ever made on the 277 lots (or, so far as we are aware, on the others, except for 1935; see *infra*) nor were any tax bills submitted to the owners.

It is unquestionably a fact that the 277 lots and lots 7829–7859 were assessed, apparently as a unit, in amounts which called for a tax payment of $81.64 for the tax year 1928. A verified copy of the page of the 1928 tax duplicate of the taxing district showing the assessments on the lots is before us. Plaintiff concedes it is a genuine copy of the original. We therefore accept it as proof of the fact of the 1928 assessment of the lots. The municipal tax collector deposes by affidavit that the lots were also assessed individually for the tax years 1929–1932, inclusive, but plaintiff challenges the adequacy of the proof of those facts before us although he does not controvert them. This will, however, be immaterial in the light of our conclusions.

On November 14, 1929 defendant purchased at a tax sale for unpaid 1928 taxes conducted by its collector all the property which has been mentioned above. The tax sale certificate, bearing number 1992, a photostatic copy of which is before us, recites a sale for 1928 taxes of $81.64 and miscellaneous costs, or an aggregate due of $91.48. This certificate was recorded in the lien records of the office of the Monmouth County Clerk January 2, 1930. Plaintiff concedes the authenticity of the copy of the certificate before us.

In December 1954 plaintiff through his attorney ordered an official tax search of all the lots referred to, and the official tax search officer of the municipality, who was also its collector, submitted to him two separate certificates, dated December 19, 1954, for which the fees were duly paid. One of these, covering the 277 lots, recited, under the form heading, "Taxes," the following: "Not Assessed. No Taxes on any of the above lots." There was a blank space under the form heading, "Tax Sales." The other certificate, covering lots

7829–7859, indicated open taxes for each of the years 1929–1932, inclusive, aggregating $426.65, and 1935 taxes of 12 cents. There was also indicated thereon a tax sale for 1922–1928 taxes, the amount due shown as $93.39, the date of sale November 14, 1929 and the certificate number 1992, with the notation "not recorded." Plaintiff did not then or at any time pay the items shown due on lots 7829–7859.

On March 28, 1955 defendant filed its complaint in the Superior Court for the foreclosure of all the lots mentioned, pursuant to the In Rem Tax Foreclosure Act (1948), *L.* 1948, *c.* 96 (*N. J. S. A.* 54:5–104.29 *et seq.*). Judgment vesting title in the defendant free from any right, title or claim of anyone else was entered in the proceedings July 6, 1955. Plaintiff was not, as he was not required to have been under the statute, served with personal notice of the proceedings. See *City of Newark v. Yeskel,* 5 *N. J.* 313 (1950). It was submitted by counsel on his behalf at the trial that he had no actual knowledge of the foreclosure until about July 20, 1961. (He does not contend that the constructive notice provisions of *R. R.* 4:82–7 were not complied with in the *in rem* proceedings.) At that time he received three notices of small tax delinquencies on other properties in Ocean Township, and it is asserted that in consulting the tax collector about them he learned for the first time of the tax foreclosure. The complaint in the present action was filed December 22, 1962. Why not before then is not explained in this record or the appellate briefs.

Although plaintiff in his brief argued that the *in rem* foreclosure proceedings were void because not founded on the jurisdictional requisite of a tax sale certificate based on taxes duly assessed and unpaid, that position must be rejected on the basis of the satisfactory post-argument demonstration to the contrary.[1] The 277 lots were sold for unpaid 1928 taxes. The tax sale certificate is presumptive evidence of the

---

[1] This is subject to an exception for a few of the lots shown not to have been assessed, and dealt with in the last paragraph of this opinion.

truth of its contents. The certificate was duly foreclosed, as is evidenced by copies of the complaint and final judgment submitted to us, and the statutory requirement for a lapse of at least two years after tax sale before filing the foreclosure, N. J. S. A. 54:5–104.34(a), was met. The final judgment in foreclosure is, of course, also presumably correct and jurisdictionally sound. Although in his reply brief plaintiff asserts that there is circumstantial evidence to indicate that the 277 lots were released from the tax sale certificate before he purchased the property on payment of $239.62, he made no such claim in the complaint or pretrial order, or at the trial, and it is too late to do so now. Moreover, this is essentially an action for equitable relief from a tax foreclosure based on asserted reliance upon an erroneous tax search certificate. It is not an action to set aside the foreclosure because the tax sale certificate had been paid, in whole, or part. We add that no direct evidence of the payment surmised has been adduced, and we would be unable to find such payment as a fact on what is before us were it proper for us to make the determination.

██ Plaintiff also relies upon the statutory requirement that: "For the four calendar years next preceding the commencement of the action [foreclosure], no part of any general land taxes levied and assessed against the land covered by such certificate has been paid." N. J. S. A. 54:5–104.34(b). However, the fact that no taxes were assessed on these lots during the four years next prior to the year of the institution of the foreclosure does not, contrary to plaintiff's contention, preclude jurisdiction. It makes no difference which the tax years are for which delinquencies are outstanding. The statute is satisfied if during the period of the four calendar years next preceding the commencement of the action no taxes, whenever assessed, levied against the land covered by the certificate foreclosed, have been paid. See Lakewood Tp. v. Block 251, Parcel 34, 48 N. J. Super. 581, 586 (App. Div. 1958). And note particularly the Historical Note under N. J. S. A. 54:5–104.34 (1960 ed., p. 163).

Defendant urges that plaintiff is barred from relief as too late, assuming this action can be regarded as a direct rather than a collateral attack upon the final judgment in the *in rem* foreclosure action. It relies alternatively upon *N. J. S. A.* 54:5–104.67 and *R. R.* 4:62–2. The statute, as construed by us in *New Shrewsbury Borough v. Block 115, Lot 4,* 74 *N. J. Super.* 1, 9 (*App. Div.* 1962), provides that a judgment in an *in rem* foreclosure shall not be reopened after three months from the date it is recorded unless for "lack of jurisdiction or fraud in the conduct of the action." The argument is that neither exception is applicable here. The rule of court cited, dealing with relief from a judgment or order, requires that a motion for that purpose must be made within a reasonable time, which is fixed at one year when the ground is mistake, surprise, etc., newly discovered evidence, or fraud, misrepresentation, etc. of the adverse party. In the *New Shrewsbury Borough* case, *supra,* we held that while the rule would control over the statute to the extent of inconsistency, the subject matter being one of procedure, nevertheless a sound policy of judicial deference to the expressed legislative view in the matter called for giving weight to the three-month limitation of the statute in deciding what was a "reasonable time" under the rule of court in relation to attempts to open *in rem* tax foreclosure judgments. (74 *N. J. Super.,* at *pp.* 8–9.)

It may very well be, however, that in relation to a contention by a property owner that false information by the official tax search officer of a municipality caused him to fail to protect himself against a foreclosure instituted soon thereafter by the municipality of an old tax sale certificate, he being free from negligence or fault and acting in good faith, time should not begin to run against his effort to obtain judicial relief until after he learned of the foreclosure, acting with reasonable diligence. It will be noted that by its very terms *R. R.* 4:62–2 "does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order or proceeding." For present purposes we shall assume that this is an independent action for relief

against the foreclosure judgment on equitable grounds, within the exclusory scope of the reference in the rule of court in question. Our conclusion is that plaintiff has not made out an equitable case for relief, entirely aside from the determination by the trial court against him on grounds of statute of limitations incorporated by analogy into the defense of laches.

Preliminarily, we note that plaintiff's claim is not, nor could it be, based upon N. J. S. A. 54:5-17, protecting *bona fide* purchasers, lessees or mortgagees who acquire their interests for a valuable consideration in reliance upon an official municipal tax search. Plaintiff's substantive claim is, rather, for equitable relief against the tax foreclosure. It purports to be supported by a line of cases in other jurisdictions whose holdings are summarized in Annotation, 21 *A. L. R.* 2d 1273 (1952), as follows:

"* * * It has been said in this regard that while the taxpayer is under a duty to pay his taxes, he is dependent upon the public officer charged with the duty of informing him concerning their payment. This is the primary duty of the officer and it is higher than any reciprocal duty of the taxpayer to make an independent search of the records.

Applied to particular situations, the general rule above stated protects a taxpayer when he in good faith inquires of the proper public officer concerning his taxes and is informed and relies upon the information that there are no taxes due. Subject to his doing equity in the matter, and provided that the taxpayer has no knowledge that taxes are actually due or is not otherwise negligent, the view is generally taken that the taxpayer may recover back his land although there has been a tax sale, or may divest the state of its wrongfully acquired tax lien." (at *p.* 1282)

If the thus stated principles are to be deemed good law in this State (as we assume but do not decide) plaintiff must take them *cum onere*. In particular, he should affirmatively show good faith, diligence and freedom from negligence. In an analogous situation our court of last resort held a delinquent taxpayer was required to show himself not "negligent or lax in the ascertainment and enforcement of his rights within a reasonable time," in order to become entitled to equitable relief against the consequences of tax default.

*Shearer v. Schaffer,* 109 *N. J. Eq.* 492, 493–494 (*E. & A.* 1932). Also here pertinent is the principle, grounded in salutary public policy, that the fiscal affairs and status of municipalities should be finally settled with reasonable dispatch. *Cf. In re Petition of Gardner,* 67 *N. J. Super.* 435, 442 (*App. Div.* 1961).

No testimony was offered by plaintiff at the trial respecting good faith, absence of negligence and promptness in asserting his rights, although considerable question attaches in these respects from the objective facts of record. Although the township made an express issue at the trial as to when plaintiff first had actual knowledge of the outstanding tax sale certificate, plaintiff did not testify. When he acquired the property in 1934 ordinary prudence would have dictated a title search. Such a search would have disclosed the recorded certificate open of record revealing the lien for 1928 taxes. Official inquiry at that time of the local collector would presumably also have revealed it, as well as any subsequent unpaid taxes. *R. S.* 54:4–64 provides that:

"* * * The validity of any tax or assessment, or the time at which it shall be payable, shall not be affected by the failure of a taxpayer to receive a tax bill, but every taxpayer is put upon notice to ascertain from the proper official of the taxing district the amount which may be due for taxes or assessments against him or his property."

From 1934 to July 1954 plaintiff neither paid taxes nor made official inquiry as to the tax status of the property. True, we are told now by the township that taxes were not assessed or collected during that period on these lots.[2] We know of no statutory authority for failure by municipal officials to assess taxable property, and plaintiff had no right to assume, without official inquiry, that he was being accorded

---

[2] Plaintiff's attorney stated at the trial that no lots in the vicinity of these were assessed during the depression. Apart from the illegality of not assessing taxable property at any time, the depression had, of course, passed into history long before 1954.

continuing tax immunity. Had he made inquiry earlier he would presumably have received the correct information as to past due taxes and liens rather than the mistaken data on the tax search certificate given him in 1954. We certainly cannot conjecture the contrary. (We must assume, on the present status of the facts and documents before us, and in the light of the issues as presented below, that a valid tax sale certificate was issued in 1929 for 1928 taxes duly levied and unpaid on these 277 lots, and that the certificate, still open of record, was unpaid through 1954.)

There is no proof, nor even any express allegation by plaintiff in any of the papers before us, that plaintiff was prepared in 1954 to pay any taxes or to discharge any liens or tax sale certificate of which he might have been apprised had the collector not made the mistake he did in the 1954 tax search certificate covering the 277 lots. It may be significant in this regard that plaintiff did not pay the tax arrears shown on the tax search certificate submitted to him at the same time for lots 7829–7859. Most of the decisions cited in the annotation relied upon by plaintiff, referred to above (21 *A. L. R.* 2*d* 1273), involved official tax statements to property owners who were paying taxes on their properties and relied upon the official statements as to the amounts due in making such payments. This plaintiff has never paid a dollar of taxes on the lots in question nor ever offered to do so at the time he ordered the tax search certificate or when he learned of the foreclosure.

After plaintiff received the incorrect tax search certificate in 1954 he appears never to have concerned himself about any taxes due for the subsequent years. He clearly had no right to assume that the property was going to remain immune from tax assessment indefinitely. Had he inquired officially as to those subsequent tax years, it is beyond question that he would then have learned that the outstanding tax sale certificate had been foreclosed, permitting a much earlier assertion of his claimed legal rights. And even when he learned, for the first time as he asserts, in July 1961 that there had been a fore-

closure, he did nothing about it until December 1962 when he instituted this action. One cannot help but surmise that plaintiff either knew, or designedly failed to make a really diligent and *bona fide* effort to ascertain and satisfy, the tax liability on these lots, long prior to the institution of this action because he had not until then made up his mind as to whether the value of the lots had risen sufficiently to make it worth his while to discharge the old tax liens and accumulated costs and interest thereon. But be the foregoing as it may, what is determinative here is that plaintiff failed at trial to make the affirmative demonstration of actual ignorance of the lien, good-faith reliance on the tax search certificate, freedom from negligence or laxity over the whole period involved from the beginning, and prompt assertion of his claim upon learning the facts. We conceive the cases properly require such a showing as an equitable prerequisite to the equity cause of action here asserted. Plaintiff had the appropriate opportunity to make the necessary showing, and we do not deem it consonant with the public interest that, in the light of all the attendant circumstances, there should be any further delay in putting to rest any question as to the defendant's title to these lands as against the plaintiff.

Our close comparison of the lot numbers on the tax duplicate, complaint, tax sale certificate and foreclosure judgment indicates, however, that lots 4284 to 4290 were sold and foreclosed but never assessed for 1928 taxes. Of these, plaintiff concededly owned lots 4284 to 4287 on July 5, 1955. Since an assessment is a jurisdictional prerequisite for a tax sale and foreclosure, plaintiff is entitled to a judgment of title to lots 4284 to 4287, inclusive, if he still owns them, unless defendant can show good cause to the contrary on a ground other than the foreclosure. There will be a remand for that purpose. As to lots 7793 to 7797, which plaintiff owns and were assessed for 1928 taxes, these were not foreclosed. They are thus not affected by the action below.

Judgment affirmed, except as stated in the last paragraph; no costs.